UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD FORD,

                    Petitioner,

      -vs-

THOMAS RICKS, Superintendent of Upstate
Correctional Facility,

              Respondent.
_____

**REPORT AND RECOMMENDATION**
**No. 01-CV-0775A(VEB)**

## I.   INTRODUCTION

Petitioner *pro se*, Richard Ford ("Ford"), filed a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 in this Court, *see* No. 00-CV-655A(Sr) (W.D.N.Y. 2000),

challenging his conviction in New York State Supreme Court (Erie County) on charges of

attempted second degree murder, first degree assault, first degree robbery, and second degree

criminal possession of a weapon. After Ford filed his petition challenging his conviction on those

charges, he subsequently moved to withdraw it in order to return to state court to exhaust a claim

of ineffective assistance of appellate counsel. On December 12, 2000, Chief United States

District Judge Richard J. Arcara signed an Order granting Ford's motion to withdraw his

petition; this Order was entered on December 13, 2000. *See* Docket No. 10 (No. 00-CV-

655A(Sr)).

Ford then returned to state court to exhaust his claim by means of an application for a writ

of error *coram nobis*. According to the affidavit of service, Ford's *coram nobis* application was

mailed to the Appellate Division, Fourth Department, of New York State Supreme Court, on

January 23, 2001. *See* Petitioner's *Coram Nobis* Application, attached as part of Respondent's

Exhibit D. The Appellate Division summarily denied *coram nobis* relief on April 27, 2001. *See*

Fourth Department Order, attached as part of Respondent's Exhibit D. Ford declares that he did

not receive the Fourth Department's Order until May 8, 2001, "because of an error of his papers

being sent [to] Upstate Correctional Facility." *See* Petition at 3 (Docket No. 1 in No. 01-CV-

0775A(VEB)). Ford's current petition was signed on May 23, 2001, but it was not received by

this Court until November 2, 2001.[1] Chief District Judge Arcara has now referred the current

petition to the undersigned for the issuance of a Report and Recommendation.

   In his Memorandum of Law in opposition to the petition, respondent notes that "[t]he

original petition in this case was dismissed on petitioner's motion, and the present petition was

filed outside the one-year habeas limitations period." Respondent's Memorandum of Law

("Resp't Mem.") at 6 (Docket No. 9 in No. 01-CV-0775A(VEB)). Respondent notes that he "was

directed to address the effect of *Zarvela v. Artuz*, 254 F.3d 374, and *Duncan v. Walker*, 531 U.S.

991, on the question of timeliness." *Id.* Respondent then goes on to argue that Ford is not entitled

to have his petition retroactively stayed under *Zarvela* because his return to state court to exhaust

his unexhausted claim was not "prompt" enough, and he delayed too long in filing the present

petition after he completed exhausting his claim. *See id.* at 7-9. Respondent further asserts that

District Judge Arcara did not abuse his discretion in dismissing the original petition without

---

[1]     Pursuant to the prisoner mailbox rule, Ford is entitled to a finding that his petition was filed on the day he turned it over to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a *pro se* prisoner's notice of appeal is deemed filed on the date that the prisoner "deliver[s] it to the prison authorities for forwarding to the court clerk," rather than when it is received by the court clerk). "Absent evidence to the contrary, the Court assumes that [the prisoner] gave his petition to prison officials for mailing on the date he signed it." *Torres v. Irvin*, 33 F. Supp.2d 257, 270 (S.D.N.Y. 1998) (citing *Hunter v. Kuhlman*, 97 Civ. 4692, 1998 WL 182441, at *1 n. 2 (S.D.N.Y. Apr. 17, 1998) (deeming petition filed on date on which petitioner signed it); *Hughes v. Irvin*, 967 F. Supp. 775, 778 (E.D.N.Y. 1997); *Jones v. Artuz*, No. CV 97-2394, 1997 WL 876735, at *1 (E.D.N.Y. Sept. 13, 1997)); *accord Johnson v. Coombe*, 156 F. Supp.2d 273, 277 (S.D.N.Y. 2001).

prejudice, instead of staying it, and that because there was no abuse of discretion, an after-the-fact stay may not be granted. *See id.* at 9.

The Court recognizes that respondent was directed to address the interplay of *Zarvela* and *Duncan* on the timeliness of Ford's petition and appreciates respondent's well-argued position on this issue. However, determining whether Ford's current petition is untimely and whether he is entitled to a retroactive stay would be much more time-consuming and complicated than simply addressing the claims raised in Ford's habeas petition. Because "potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit[,]" *Brown v. Thomas*, No. 02 Civ. 257(GEL), 2003 WL 941940, at *1 (S.D.N.Y. Mar. 10, 2003); *accord, e.g., Boddie v. New York State Div'n of Parole*, 285 F. Supp.2d 421, 428 (S.D.N.Y. 2003), in the interest of judicial economy, the Court will proceed to consider the claims raised in Ford's habeas petition.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Erie County Indictment No. 96-2328-001 charged Ford with one count of attempted murder in the second degree (N.Y. Penal Law §§ 110.00, 125.25(1)), one count of assault in the first degree (N.Y. Penal Law § 120.10(1)), one count of robbery in the first degree (N.Y. Penal Law § 160.15(4), 20.00), and one count of criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03).

At Ford's jury trial in Erie County Supreme Court (Rossetti, J.), the two victims, Jamel Fields ("Fields") and Latrina Mays ("Mays") testified for the prosecution. Fields and Mays had stopped by Fields' mother's home on Olympic Avenue in the City of Buffalo on September 12,

1996, so that Fields could pick up a change of clothes. T.163, 165.[2] As Mays parked her car on the street outside the house, Fields noticed a small gray vehicle traveling down the block in the opposite direction. The car stopped and two individuals emerged; one was Ford, and the other was a man known as "Shortie." Ford and Shortie proceeded to the front door of a nearby drug house, but they were unable to gain entry. Fields recognized Ford as someone he had seen at that drug house on several prior occasions. T.164-68.

Ford and Shortie then approached Fields and asked whether he had any marijuana for sale. Fields, who admitted at trial that he sold drugs, replied affirmatively. Before any deal could be consummated, however, Ford pulled out a gun, grabbed Fields, and dragged him into a driveway. Ford demanded that Fields empty his pockets; Fields complied, tossing money, papers, and his keys on the ground. Ford then ordered Fields to lie down on his stomach. T.168-74. Shortie punched Fields in the eye, and Ford grabbed the money off the ground and shot Fields twice–once in the left wrist and once in the left eye. As a consequence of these injuries, Fields lost his left eye and has limited feeling in three fingers on his left hand. T.174-78.

Seeing what had happened, Mays jumped out of her car and crossed the street to get to Fields. She quickly retreated, however, when Ford pointed his gun at her. Apparently, Mays initially told the police that she could identify the attackers, T.247. As a result of Ford's threatening behavior toward her at the time of the incident, Mays backed off from that identification, claiming that she could not identify Fields' assailant. T.94-95. Eventually, when her fear subsided, Mays identified Ford in a pre-trial line-up. Fields also identified Ford in a pre-trial line-up. T.90-95, 99, 107. Fields and Mays testified that they had the opportunity to observe

---

[2]    Citations to "T.___" refer to the trial transcript.

Ford in adequate light and had a clear view of his face. T.89. In particular, Fields recognized Ford as someone whom he had seen in the neighborhood on numerous occasions prior to the crime. T.167. Mays had noticed Ford around her neighborhood in the weeks following the shooting. T.96-97.

The theory of the defense was that of "deliberate misidentification." During his opening statement and on summation, defense counsel argued that Fields was a street-level drug dealer who had purchased marijuana and cocaine on credit. T.38-39; 334-36. Defense counsel suggested that Fields had fallen behind in paying his supplier and therefore the shooting was a way for the supplier to "send a message" that Fields ought to pay his debt. T.35-38; 338. According to defense counsel, Fields was shot in the wrist and the eye by two members of the so-called "Dodgetown gang" named "Ray" and "Shortie." Defense counsel hypothesized that Ford kept the identity of the real assailants a secret so as not to fall into further disfavor with his supplier and that Ford was a "scapegoat." T.37; 334-35; 338.

The jury returned a verdict finding Ford guilty as charged. He was sentenced, as a second felony offender, to concurrent determinate terms of imprisonment of twenty-five years for the robbery conviction; twenty years for the attempted murder conviction; fifteen years for the weapons possession conviction; and fifteen years for the assault conviction. Represented by different counsel on appeal, Ford appealed his conviction to the Appellate Division, Fourth Department, of New York State Supreme Court, which unanimously affirmed the conviction. *People v. Ford*, 262 A.D.2d 1052, 692 N.Y.S.2d 870 (App. Div. 4th Dept. 1999). The New York Court of Appeals denied leave to appeal. *People v. Ford*, 93 N.Y.2d 1044, 720 N.E.2d 96, 697 N.Y.S.2d 876 (N.Y. 1999).

In his present habeas petition, Ford asserts the following grounds for relief: (1) remarks by the prosecutor on summation unfairly shifted the burden of proof; (2) appellate counsel was ineffective in failing to argue that trial counsel erred in failing to object to petitioner being sentenced as a second felony offender; and (3) the trial court improperly allowed admission of "bolstering" testimony. *See* Petition (Docket No. 1 in No. 01-CV-755A(VEB)).

For the reasons set forth below, the Court recommends that the petition be dismissed and that a Certificate of Appealability not issue with respect to any of his claims.

## III.   DISCUSSION

### A.   The Doctrine of Procedural Default

Under the "adequate and independent" state ground doctrine, a federal court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground, be it substantive or procedural, that is independent of the federal question and adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 728-29 (1991). The doctrine applies to bar federal habeas review when a state court has declined to address a petitioner's federal claims because the petitioner has failed to meet a state procedural requirement. *Id.* at 729-30. In such cases, the state judgment is said to rest on independent and adequate state procedural grounds. *Id.* at 730 (citations omitted). Furthermore, this proscription applies even in those circumstances where a state court expressly relies on a procedural default as an independent and adequate state-law ground but, nevertheless, has ruled in the alternative on the merits of the federal claim. *See Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990).

A habeas corpus petitioner, however, may overcome a procedural default created by the state court's invocation of an "independent and adequate" basis for its decision by (1) showing

cause for the default and prejudice attributable thereto, or (2) by demonstrating that a fundamental miscarriage of justice will ensue if the claim is not reviewed by the habeas court. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). The "fundamental miscarriage of justice" exception requires the petitioner to make a factual showing that he is "actually innocent" of the crime for which he was convicted. *See id.*  It bears noting that "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *see also Schlup v. Delo*, 513 U.S. 298, 324-27 (1995) (explaining that a "fundamental miscarriage of justice" may be demonstrated by showing through "new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial," that "it is more likely than not that no reasonable juror would have convicted [petitioner] in light of the new evidence").

**B.**    **Analysis of Petitioner's Claims**

    **1.**    **Prosecutorial Misconduct**

Ford contends that he was denied a fair trial because some of the prosecutor's remarks during summation had the effect of shifting the burden of proof from the prosecution to the defense. At trial, defense counsel objected to the allegedly offensive remarks, and the trial court sustained defense counsel's objections. On direct appeal, the Fourth Department rejected Ford's claim of prosecutorial misconduct as follows:

> Because defendant's objections to those remarks [by the prosecutor] were
> sustained and defendant did not move for a mistrial or request curative
> instructions, any error is deemed to have been corrected to defendant's
> satisfaction.

*People v. Ford*, 262 A.D.2d at 1053 (citing *People v Jian Guo Xia*, 255 A.D.2d 525, 680

N.Y.S.2d 167 (App. Div. 2d Dept. 1998); *People v Heide*, 84 N.Y.2d 943, 944, 644 N.E.2d 1370,

620 N.Y.S.2d 814 (N.Y. 1994); *People v Ceballo*, 242 A.D.2d 428, 429, 662 N.Y.S.2d 456 (App.

Div. 1ˢᵗ Dept. 1997)). Although the Fourth Department found that Ford's contentions regarding

the prosecutor's summation were unpreserved, it nevertheless ruled that "[i]n any event, the

prosecutor's remarks were fair response to defense counsel's summation[.]" *Id.* (citations

omitted).

Respondent contends that "by invoking a procedural bar," the Appellate Division "has

foreclosed habeas corpus review unless petitioner can demonstrate cause and prejudice." Resp't

Mem. at 15 (Docket No. 9 in No. 01-CV-755A(VEB)).  It is well-settled that "federal habeas

review is foreclosed when a state court has expressly relied on a procedural default as an

independent and adequate state ground, even where the state court has also ruled in the

alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d at 9.  The

Appellate Division here relied on the rule in New York that where a defendant fails to demand

curative instructions to the jury once objections are sustained, the erroneous remarks are deemed

to have been corrected to the defendant's satisfaction. *See People v. Heide*, 84 N.Y.2d at 944

("Defendant's claim that certain remarks made by the prosecutor during summation were so

prejudicial as to deprive him of a fair trial is unpreserved for this Court's review. Following the

Trial Judge's curative instructions, defense counsel neither objected further, nor requested a

mistrial. Under these circumstances, the curative instructions must be deemed to have corrected

the error to the defendant's satisfaction[.]") (citing *People v. Williams*, 46 N.Y.2d 1070, 1071,

416 N.Y.S.2d 792, 390 N.E.2d 299 (N.Y. 1979) ("Though the prosecutor's summation comment

suggesting that the defendant may have engaged in other criminal conduct was prejudicial in

nature, the Trial Judge's lucid curative instructions to the jury, following which neither any

further objection nor any request for a mistrial was made, must be deemed to have corrected the

error to the defendant's satisfaction."); *see also People v. Medina*, 53 N.Y.2d 951, 953, 441

N.Y.S.2d 442, 442-43, 424 N.E.2d 276 (N.Y. 1981) (holding that where defense counsel's

objection to prosecutor's summation remarks were upheld by the court, and counsel did not

request curative instructions or move for a mistrial, counsel did not preserve grounds for appeal);

*People v. Ferguson*, 243 A.D.2d 308, 664 N.Y.S.2d 521 (App. Div. 1st Dept.) (holding that

defendant's failure to request further relief when objections to prosecutor's statements were

sustained left claims unpreserved for appeal), *appeal denied*, 91 N.Y.2d 872, 668 N.Y.S.2d 571,

691 N.E.2d 643 (N.Y. 1997). This rule derives from New York's contemporaneous objection

rule, embodied in C.P.L. § 470.05(2), which"'require[s], at the very least, that any matter which a

party wishes the appellate court to decide have been brought to the attention of the trial court at a

time and in a way that gave the latter the opportunity to remedy the problem and thereby avert

reversible error.'" *Garcia v. Lewis*, 188 F.3d 71, 78 (2d Cir. 1999) (quoting *People v. Luperon*,

85 N.Y.2d 71, 78, 623 N.Y.S.2d 735, 737-38, 647 N.E.2d 1243, 1247-48 (N.Y. 1995)).

Both the Second Circuit and the Supreme Court have recognized that procedural rules

such as New York's contemporaneous objection rule serve a legitimate state interest. *Id.* (citing,

*e.g.*, *Wainwright v. Sykes*, 433 U.S. 72, 88 (1977) (noting the "many interests" that

contemporaneous objection rules serve, such as "enabl[ing] the record to be made . . .  when the

recollections of witnesses are freshest," enabling the judge "to make the factual determinations

necessary for properly deciding the federal constitutional question," and "making a major

contribution to finality in criminal litigation" by leading to avoidance of constitutional error);

*Peterson v. Scully*, 896 F.2d 661, 663 (2d Cir. 1990)). Consequently, the Second Circuit has

"observed and deferred to New York's consistent application of its contemporaneous objection

rules." *Garcia v. Lewis*, 188 F.3d at 78 (citing *Bossett v. Walker*, 41 F.3d 825, 829 n. 2 (2d Cir.

1994) (respecting state court's application of New York C.P.L. § 470.05(2) as adequate bar to

federal habeas review), *cert. denied*, 514 U.S. 1054 (1995); *Fernandez v. Leonardo*, 931 F.2d

214, 216 (2d Cir. 1991) ("It is undisputed that [petitioner's] failure to note this objection [under

C.P.L. § 470.05(2))] constituted a procedural default under New York law.")). It thus appears

beyond argument that the requirement of a timely objection pursuant to C.P.L. § 470.05(2) with

respect to allegedly improper summation by a prosecutor is a "firmly established and regularly

followed" procedural rule in New York. Under circumstances nearly identical to those presented

here, habeas courts in this Circuit have found that a petitioner's failure to request further relief

after his objections to prosecutorial misconduct are sustained operates to create a procedural bar

under New York law. *See Brunson v. Tracy*, 378 F. Supp.2d 100, 106 (E.D.N.Y. 2005) ("As the

Appellate Division found, this claim was procedurally barred when petitioner failed to object

with sufficient specificity to the alleged errors in the prosecutor's cross-examination, or to

demand curative instructions to the jury once the objections were sustained. In such a situation,

New York's law deems 'the curative instructions . . . to have corrected the error to the

defendant's satisfaction[.]'") (quotation omitted); *Simpson v. Portuondo*, No. 01 CIV 1379 BSJ

AJP, 2001 WL 830946, at *11 & n. 38 ("Under New York law, in order to preserve his claims

for appellate review, [petitioner] was required to raise his challenges to the prosecutor's alleged

errors in summation by way of specific objections before the trial court, and, if his objections

were sustained, seek further relief.") (citations omitted) (Report & Recommendation); *Chisolm v.*

*Headley*, 58 F. Supp.2d 281, 286-87 & n. 2 (S.D.N.Y. 1999). Therefore, the Appellate Division's reliance on this rule to find Ford's claim of prosecutorial misconduct to be unpreserved was an "adequate" state ground to support the judgment.

This Court may reach a habeas petitioner's claim despite a procedural default if the petitioner can demonstrate either cause and prejudice from the default or a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. at 750. In this case, Ford has not shown cause for the procedural default. *See Bloomer v. United States*, 162 F.3d 187, 191 (2d Cir. 1998) (requiring a showing that "some objective factor external to the defense impeded counsel's efforts to raise the claim at an earlier proceeding") (internal quotations and citations omitted). Notably, Ford has not demonstrated, or even attempted to demonstrate, that trial counsel was ineffective by failing to object with greater specificity or press the court for further relief; attorney error short of ineffective assistance of counsel does not constitute cause and will not excuse a procedural default. *See Murray v. Carrier*, 477 U.S. 478, 486-88 (1986). Furthermore, Ford has not attempted to show prejudice attributable to the procedural default. Finally, Ford has not made the factual showing of "actual innocence" required to invoke the "fundamental miscarriage of justice" exception to the procedural default rule. Accordingly, the Court can find no basis to excuse the procedural default of this procedural misconduct claim, and recommends that it be dismissed as procedurally barred.

In any event, were the Court to review the merits of the procedural misconduct claim, it would find argument to be without merit. A federal court may only grant habeas relief if the prosecutor's comments "constituted more than mere trial error, and were instead so egregious as to violate the defendant's due process rights." *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir.

1998); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (stating that prosecutorial misconduct does not give rise to a constitutional violation unless the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process"). A habeas petitioner must show "that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 823 (2d Cir. 1994). In considering whether the petitioner suffered actual prejudice, the reviewing court should evaluate (1) the severity of the misconduct, (2) any measures adopted to cure the misconduct, and (3) the certainty of the conviction absent the improper statements. *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990).

In weighing the severity of the misconduct, the Court should examine whether the prosecutor's remarks were responsive in tenor and scope to defense counsel's summation remarks. *See United States v. Young*, 470 U.S. 1, 12-13 (1985) ("In order to make an appropriate assessment, the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo. Thus the import of the evaluation has been that if the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction.").

Here, the prosecutor commented that there was no proof to support defense counsel's theory of deliberate misidentification by the victims. *See* T.356-57; 360-61. For instance, the prosecutor commented, "There is nothing, there is nothing to this defense whatsoever. . . . There is nothing that he has put forward to support one argument he as [sic] made in his closing." T.356. Although a prosecutor may not suggest that a defendant has an affirmative obligation to

present evidence on his own behalf, the Second Circuit has recognized that once a defendant

does in fact put on a defense case, the prosecutor may fairly comment on the defense's failure to

call witnesses to support his factual theory. *See United States v. Yuzary*, 55 F.3d 47, 53 (2d Cir.

1995) ("As to the government's summation, ' "[t]he prosecutor [wa]s entitled to comment on

[Yuzary's] failure . . . to support his own factual theories with witnesses."'") (quoting *United*

*States v. Barnes*, 604 F.2d 121, 148 (2d Cir. 1979) (quoting *United States v. Bubar*, 567 F.2d

192, 199 (2d Cir.), *cert. denied*, 434 U.S. 872 (1977) (citations omitted)), *cert. denied*, 446 U.S.

907 (1980); citing *United States v. Rosa*, 11 F.3d 315, 342-43 (2d Cir.1993), *cert. denied*, 511

U.S. 1042 (1994)). Given the theory argued by defense counsel, for which the only evidence was

Fields' admission that he had sold drugs in the past, the prosecutor's remarks about the lack of

proof were not improper. *See Yuzary*; 55 F.3d at 53; *Montero v. Sabourin*, No. 02 Civ.

8666(RWS), 2003 WL 21012072, at *7 (S.D.N.Y. May 5, 2003) ("The prosecutor's comment

that defense counsel had failed to prove at trial all the things he had promised in his opening to

demonstrate, did not constitute improper burden-shifting. ); *Darden v. Wainwright*, 477 U.S. 168,

181-182 (1986) (prosecutor's summation did not render trial fundamentally unfair where

prosecutor did not manipulate or misstate the evidence, and comments were in part invited by or

responsive to the summation of the defense); *Orr v. Schaeffer*, 460 F. Supp. 964, 967 (E.D.N.Y.

1978) (holding that the prosecutor's statements "were a rejoinder to defense counsel's argument

that the witnesses' identifications were suggested by the circumstances of the photographic

spread and lineup situations"; noting that "[c]ourts have consistently upheld '[t]he right of the

prosecution to rebut an argument raised by the defense, even to the extent of permitting the

prosecutor to inject his view of the facts to counter the defense counsel's view of the facts'");

-13-

*McEachin v. Ross*, 951 F. Supp. 478, 482 (S.D.N.Y. 1997) (petitioner complained that prosecutor commented numerous times that he had "put forth no defense" and that the effect of the prosecutor's alleged misconduct was to shift the burden of proof to petitioner; district court held that in light of trial counsel's defense argument, the prosecutor's comments were entirely proper and did not constitute misconduct).

Furthermore, the trial court sustained all of defense counsel's objections to the prosecutor's comments. The trial court did not issue curative instructions at the time of the objections, but it did instruct that the summations and arguments of counsel were "not evidence and must not be considered . . . as such." T.388.  The trial court emphasized that "[n]o one, not counsel nor the Court may presume to tell [the jury] how the issues of fact should be decided." T.389. As to the burden of proof, the trial court explained that the defendant "cannot be required to testify or disprove anything." T.393; *see also id.* ("Put another way, a defendant is never required to prove anything. On the contrary, the people [sic] having accused the defendant of the crimes charged have the burden of proving the defendant guilty beyond a reasonable doubt. . . .") The trial court explained that the prosecution's burden of proof never shifts to the defendant, and that the presumption of innocence remains with the defendant until such time as the jurors may unanimously agree that the prosecution has proved the defendant's guilt beyond a reasonable doubt. T.393-94. Finally, the proof at trial against Ford was overwhelming, thereby convincing this Court of the certainty of petitioner's conviction even without the prosecutor's allegedly improper comments. For the foregoing reasons, dismissal of Ford's claim of prosecutorial misconduct on the merits likewise would be warranted.

**2.      Ineffective assistance of appellate counsel**

Ford contends that his appellate counsel should have argued that trial counsel was ineffective in failing to object to the second felony offender statement filed by the prosecutor. When this claim was raised in Ford's *coram nobis* application, the Fourth Department summarily denied it. *People v. Ford*, 2001 WL 469159, at *1, 283 A.D.2d 1035, 724 N.Y.S.2d 142 (Table) (App. Div. 4th Dept. 2001).

In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner must satisfy a two-part test. First, a petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution. *Id.* at 688. In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." *Id.* Second, a petitioner must show that counsel's deficient performance prejudiced him. *Id.* at 694. To establish the "prejudice" prong of the *Strickland* test, a petitioner must show that a "reasonable probability" exists that, but for counsel's error, the outcome of the trial would have been different. *Id.* at 694. The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992), *cert. denied*, 508 U.S. 912 (1993)). A petitioner alleging ineffective assistance of appellate counsel must prove

both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. *Mayo,* 13 F.3d at 533-34; *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir. 2001).

Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins,* 528 U.S. at 288 (citing *Jones v. Barnes,* 463 U.S. 745, 750-54 (1983)); *accord, e.g., Sellan v. Kuhlman,* 261 F.3d 303, 317 (2d Cir. 2001) ("This process of 'winnowing out weaker arguments on appeal and focusing on' those  more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."). The habeas court should not second-guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues.  *Jones*, 463 U.S. at 754; *see also Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998). Thus, a petitioner may establish constitutionally inadequate performance only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo,* 13 F .3d at 533.

New York appellate courts consistently have rejected arguments such as the one urged by Ford here that defense counsel is ineffective in failing to challenge alleged technical deficiencies of a second felony offender statement where the defendant, in fact, has admitted that a prior felony conviction was valid. *See People v. Ochs*,16 A.D.3d 971, 972, 792 N.Y.S.2d 248, 249 (App. Div. 3d Dept. 2005) ("In light of defendant's admissions at the plea hearing, we are similarly unpersuaded by his contention that defense counsel's failure to challenge the second felony offender statement constituted ineffective assistance of counsel[.]") (citing *People v.*

*Bachman*, 272 A.D.2d 718, 719, 708 N.Y.S.2d 725 (App. Div. 3d Dept.) ("We are similarly

unpersuaded that defense counsel's failure to challenge the predicate offense amounted to

ineffective assistance of counsel. Defendant admitted his status as a second felony offender and,

in light of our conclusion that the Pennsylvania conviction properly served as a predicate felony

for sentencing purposes, defendant has failed to demonstrate any prejudice resulting from defense

counsel's alleged inadequacies[.]") (internal citation omitted), *appeal denied*, 95 N.Y.2d 903,

716 N.Y.S.2d 644, 739 N.E.2d 1149 (N.Y. 2000)).

Here, as the Fourth Department found, Ford admitted the prior convictions contained in

the second felony offender statement required by C.P.L § 400.21(2). Thus, in light of Ford's

admissions, the absence of dates in the second felony offender statement was harmless error.

Consequently, Ford cannot demonstrate how he was prejudiced by trial counsel's failure to

challenge the defects in the second felony offender statement, which is fatal to his claim that trial

counsel was ineffective. Because he has failed to demonstrate that he had a meritorious

ineffective assistance of trial counsel claim, there is no basis to fault appellate counsel for failing

to assert such a claim on direct appeal. Ford cannot demonstrate that appellate counsel acted in a

professionally unreasonable manner by omitting a claim that had no likelihood of success on

direct appeal. Furthermore, he cannot demonstrate that but for appellate counsel's failure to

include the contested issue, the outcome of his appeal, in all reasonable probability, would have

been different. Indeed, this Court can say with confidence that the outcome of the appeal

certainly would not have been different because appellate counsel did raise the underlying claim

regarding the deficiency in the C.P.L. § 400.21 statement–and the Fourth Department rejected it:

We reject the contention of defendant that he was improperly sentenced as a

> second violent felony offender because the statement required by CPL 400.21(2) did not contain the dates of incarceration for previous convictions. Defense counsel provided the court with the necessary information prior to sentencing. Furthermore, defendant declined a hearing and admitted the prior convictions. Thus, we conclude that to remit this matter for resentencing would be futile and pointless.

*People v. Ford*, 262 A.D.2d at 1053 (quotation omitted). Thus, the absence of prejudice stemming from both trial counsel's and appellate counsel's actions is clearly established. For the foregoing reasons, Ford's ineffective assistance of appellate counsel claim is without merit and should be dismissed.

### 3.      Improper admission of "bolstering" testimony

Ford's third claim for habeas relief derives from alleged evidentiary errors committed by the trial court. First, Ford contends that the trial court erred in allowing testimony from two police officers which allegedly "bolstered" the prosecution's proof regarding the identification of Ford as one of the perpetrators.[3] Second, Ford asserts "bolstering" error in the testimony by the victim's mother to the effect that the victim was shown a photograph of Ford at her home.[4] On

---

[3]      Officer Smardz testified that both Fields and Mays selected Ford during a pre-trial line-up procedure. T.278. Lieutenant Dole offered testimony that, shortly after the shooting occurred, Fields and Mays stated to him that they could identify the perpetrators, T.247-49; however, he did not testify about the pre-trial identifications of Ford made by the victims.

[4]      The victim's mother, Sandra Fields, testified that the police had shown various individual photographs to her son at her house, and that Ford's picture was included among those photographs. T.65-66. Defense counsel "opened the door" to the questioning that led to this testimony; during his opening statement, he indicated that Fields and Mays had been shown individual photographs of suspects prior to the pre-trial line-up. T.41 ("The two witnesses at this time are over in the district attorney's office where there are mug shots and single photographs and they're free to talk to one another."). The prosecutor objected to that statement on the basis that there was "[n]o proof" of that having occurred. *Id.* The prosecutor later asked Mrs. Fields if the police had ever shown single photographs to her son; defense counsel objected to this question as leading and the trial court instructed the prosecutor to rephrase his question. The prosecutor then asked if Mrs. Fields had been present when the police showed any photographs to her son. T.66. The prosecutor then asked whether any of those photographs were single pictures. *Id.* Neither question was objected to; Mrs. Fields responded affirmatively to both questions. The prosecutor then sought clarification by asking whether the photographs were contained in a photographic array

-18-

direct appeal, the Appellate Division held that the trial court "properly denied defendant's motion for a mistrial following testimony by the victim's mother that the victim was shown a photograph of defendant at her home" because "[a]lthough that testimony bolstered the identification testimony of the victim, reversal [was] not required because the evidence of identity is so strong that there is no serious issue upon the point[.]" *People v. Ford*, 262 A.D.2d at 1052 (citations omitted). The Appellate Division found that both the victim and his girlfriend, each of whom testified at trial, "had unobstructed views of defendant during the commission of the crime and at other times in their neighborhood." *Id.* The Fourth Department rejected Ford's further contentions concerning bolstering of identification testimony (*i.e.*, those concerning the police officers' testimony) as "not preserved for [its] review." *Id.*

Although the Appellate Division did not refer specifically to New York's "contemporaneous objection" rule, embodied in C.P.L. § 470.05(2), when it disposed of this claim, it is apparent that the court was relying on that rule. The Court agrees with respondent that the Appellate Division's reliance upon a state procedural bar rule here is clear. A failure to object at trial, despite a state law requirement that the defendant make a contemporaneous objection in order to preserve the issue for appeal, has specifically been held to be both an independent and adequate state ground for a state appellate court's rejection of the claim as unpreserved. *See Velasquez v. Leonardo*, 898 F.2d at 9 (holding that New York's "contemporaneous objection" rule was adequate and independent state ground); *Taylor v. Harris*, 640 F.2d 1, 2 (2d Cir. 1981)

---

or whether they were presented one at a time. T.75-76. Because a leading question is ordinarily one that suggests the answer, the trial court erroneously sustained, in this Court's view, defense counsel's objection on the basis that the question was leading; the prosecutor did not attempt to rephrase the question but asked if any of the photographs were of Ford. Mrs. Fields answered affirmatively. Defense counsel, during the recess, moved for a mistrial, which was denied. T.74-79.

("It is well settled in New York that failure to object to an erroneous charge constitutes a waiver precluding review."). With respect to bolstering claims in particular, and the failure to preserve a claim of improper bolstering by a timely objection, courts in this Circuit have held that New York's contemporaneous objection rule constitutes an adequate and independent state ground for a state court to deny the claim. *See Wilson v. Tracy*, Nos. 02-CV-5891(JBW), 03-MISC-0066 (JBW), 2003 WL 22952836, at *5 (E.D.N.Y. Nov. 3, 2003) ("This claim is exhausted but was deemed procedurally barred by the Appellate Division because petitioner failed to raise a specific, contemporaneous objection on the ground of improper bolstering. Under the circumstances of the instant case, that state procedural ground was independent and adequate."); *Nieves v. Fischer*, No. 03 Civ. 9803(DC),  2004 WL 2997860, at *7 (S.D.N.Y. Dec. 28, 2004) (petitioner failed to raise a specific, contemporaneous objection on the ground of improper bolstering and state appellate court denied claim as unpreserved, resulting in the claim being procedurally barred from habeas review).

Therefore, federal habeas review is precluded unless Ford can demonstrate "cause" for the default and "prejudice" resulting from the federal habeas court's failure to consider the claim, or show that "failure to consider the claims will result in a fundamental miscarriage of justice." *See Coleman*, 501 U.S. at 750; *Lee v. Kemna*, 534 U.S. 362, 387 (2002). Plainly, prejudice resulting from the procedural default of this claim is lacking because alleged "bolstering" of a prosecution witness' testimony does not state a constitutional claim redressable on federal habeas. *See Benitez v. Senkowski*, No. 97 Civ. 7819(DLC), 1998 WL 668079, at *5 (S.D.N.Y. Sept. 17, 1998) (bolstering claim does not state federal claim); *Ayala v. Hernandez*, 712 F.Supp. 1069, 1074 (E.D.N.Y. 1989) (police "bolstering" of eyewitness identification testimony held to

be, at most, violation of state rule, and thus not could not form basis for constitutional claim); *Kanani v. Phillips*, No. 03 Civ. 2534PKCAJP, 2004 WL 2296128, at *21 (S.D.N.Y. Oct. 13, 2004) (Report & Recommendation) (stating that the rule forbidding "bolstering" is a state law standard, and a claim that a witness' testimony constituted improper bolstering does not state a federal constitutional claim cognizable on habeas corpus) (citations omitted); *Orr v. Schaeffer*, 460 F. Supp. at 967 ("This Circuit has never regarded the practice [of bolstering] as inimical to trial fairness."); *Diaz v. Greiner*, 110 F. Supp.2d 225, 234 (S.D.N.Y. 2000) ("Bolstering claims have been (expressly) held not to be cognizable on federal habeas review.") (citing *Styles v. Zandt*, No. 94 Civ. 1863 (MGC), 1995 WL 326445, at *5 (S.D.N.Y. May 31, 1995) (stating that "a claim of improper 'bolstering' is not a cognizable basis of federal habeas relief"), *aff'd mem.*, 101 F.3d 684 (2d Cir.), *cert. denied*, 519 U.S. 936 (1996)); *Vega v. Berry*, No. 90 Civ. 7044 (LBS), 1991 WL 73847, at *2 (S.D.N.Y. Apr. 29, 1991)("[A]lthough bolstering is a practice prohibited in various states, including New York, the practice is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a defendant of his due process right to a fair trial."); *Malik v. Khoenan*, No. 94 CIV. 8084 (LLS), 1996 WL 137478, at *4 (S.D.N.Y.  Mar. 26, 1996) ("a claim of bolstering is not a federal constitutional claim cognizable on habeas review"); *Snow v. Reid*, 619 F. Supp. 579, 582 (S.D.N.Y. 1985).

Because Ford has not shown that he would be prejudiced by his inability to assert his claim regarding the alleged "bolstering" testimony by the police officers, the Court need not consider whether he has not shown cause for his failure to comply with New York's contemporaneous objection rule. *See Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *McCleskey v. Zant*, 499 U.S. 467, 502 (1991). This claim should be dismissed as procedurally defaulted.

Ford's other bolstering claim, regarding the testimony by the victim's mother, is not procedurally defaulted; defense counsel did object at trial, and the Appellate Division considered the claim on the merits. However, even if it were an evidentiary error, which this Court does not find to be the case, the claim does not present a federal constitutional question and should be dismissed as not cognizable on federal habeas review. *See Steed v. State of New York Executive Dept. Div. of Parole*, No. 00 Civ. 2293, 2000 WL 1593342, at *7 (S.D.N.Y. Oct.25, 2000) ("[T]he issue of bolstering has never been presented to the Supreme Court because it is a matter of state law."); *Diaz v. Greiner*, 110 F. Supp.2d at 234 ("Bolstering claims have been (expressly) held not to be cognizable on federal habeas review."); *Torres v. Miller*, No. 97 CV 4406, 1998 WL 355322, at *2 (E.D.N.Y. May 5, 1998) ("Petitioner's third claim, that a witness for the People improperly bolstered the eyewitness's testimony, does not raise a federal constitutional claim cognizable on habeas corpus. This is a state evidentiary matter based on state law, and is beyond the scope of this Court's review."); *Harris v. Hollins*, 95 Civ. 4376, 1997 WL 633440, at *3 (S.D.N.Y. Oct.14, 1997) ("The concept of 'bolstering' really has no place as an issue in criminal jurisprudence based on the United States Constitution. It is at most a New York State rule or policy, . . . [v]iolation of [which] does not rise to a constitutional level.") (quotation omitted); *Connolly v. Artuz*, No. 93 CV 4470, 1995 WL 561343, at * 7-8 (E.D.N.Y. Sept. 15, 1995); *Styles v. Van Zandt*, 1995 WL 326445, at *5 (holding that "a claim of improper 'bolstering' is not a cognizable basis of federal habeas relief"); *Ortiz v. State of New York*, 93 Civ. 3062, 1993 WL 187875, at *1 (S.D.N.Y. May 25, 1993) ("A claim of 'bolstering' is not a federal constitutional claim cognizable on habeas review."); *Battee v. Williams*, No. 91-CV-0154, 1993 WL 117530, at *3 (W.D.N.Y. Apr. 8, 1993) (Elfvin, J.) ("Bolstering is at

most a state law evidentiary concept . . . , and violation of that evidentiary rule does not rise to a

federal constitutional level.") (citing *Billups v. Costello*, 91 Civ. 6296, 1992 WL 170650 at *4

(S.D.N.Y. Jul. 6, 1992); *Snow v. Reid*, 619 F. Supp. at 582 ("The concept of "bolstering" really

has no place as an issue in criminal jurisprudence based on the United States Constitution. It is at

most a New York State rule or policy, derived from *People v. Trowbridge*, 305 N.Y. 471, 113

N.E.2d 841 (1953), which holds that it is error to permit an identification made by one witness to

be corroborated by the testimony of another witness who merely testifies that the identification

did occur. Violation of that rule, as is so with regard to many such state court rules, does not rise

to a constitutional level. Under Rule 401, F. R. Evid., which is consistent with the Constitution,

any evidence is relevant which has "any tendency to make the existence of any fact that is of

consequence to the determination of the action than it would be without the evidence. So-called

"bolstering" is within that rule, subject only to limitation by the trial judge finding under Rule

403, F. R. Evid., that "unfair" prejudice might result. See also Rule 801(d)(1)(C), F. R. Evid.,

which represents a federal legislative finding that such bolstering testimony is non-hearsay, and

admissible, subject only to the limitation, if any, which Rule 403 applies in any case.")).

Thus, as to his claim of "bolstering" testimony elicited from the victim's mother, Sandra

Fields, Ford has failed to present a constitutional claim appropriate for habeas corpus review.

Accordingly, the Court recommends that the claim be dismissed.

## IV.    CONCLUSION

For the reasons set forth above, the Court recommends that the petition for a writ of

habeas corpus filed by Richard Ford be **DENIED**. Furthermore, the Court believes that Ford has

not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. §

2253(c)(2). Therefore, the Court recommends that no Certificate of Appealability should issue

with respect to any of Ford's claims.

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI

United States Magistrate Judge

Dated:  February 27, 2007

Buffalo, New York.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1ˢᵗ Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to

the attorneys for the Plaintiff and the Defendant.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: Buffalo, New York
February <u>27</u>, 2007.